IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                                            1:20-cr-01864-KWR

ROBERT BENJAMIN NELSON,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on the United States' Motion to Determine Federal Officer Status (**Doc. 36**). On October 20, 2021, the Court conducted an evidentiary hearing on the motion, and the parties submitted written closing arguments. Having reviewed the pleadings, and heard oral argument and testimony at the hearing, the Court finds that the Government's motion is well-taken and, therefore, is **GRANTED**.

**BACKGROUND**

Defendant Nelson faces two charges: (1) attempted murder of a United States employee or officer, 18 U.S.C. § 1114, and (2) discharge of a firearm during a crime of violence, 18 U.S.C. § 924(c)(1)(A)(iii), in connection with allegedly shooting Officer S.D. on September 12, 2020.[1] **Doc. 1**.

Officer S.D.[2] is a full-time New Mexico State Police ("NMSP") officer. A Memorandum of Understanding ("MOU") exists between the NMSP and the U.S. Immigration and Customs Enforcement. *See* **Gov't Ex. 2, at 1**. Under this MOU, Homeland Security Investigations ("HSI"), the investigative arm

---

[1] The Court is not making factual findings related to Defendant's conduct on the underlying charge in this Memorandum Opinion and Order.

[2] The parties at times referred to the victim by initials and the Court does the same to maintain consistency.

of Immigration and Customs Enforcement, agreed to designate certain NMSP officers as federal Customs Officers, also called Task Force Officers, without any additional compensation. *Id.* HSI has the authority to conduct federal criminal investigations into the cross-border movement of people, goods, money, technology, and contraband throughout the United States.

Officer S.D. was nominated by the NMSP to become an HSI Task Force Officer. *See* **Doc. 52, at 15**. S.D. then successfully completed an HSI Task Force Officer Training Course. *See* **Gov't Ex. 1, at 4**. On August 26, 2020, S.D. was designated as a full-time federal HSI Task Force Officer by Acting Special Agent in Charge Erik P. Breitzke and this designation was valid for two years. *Id.* **at 2**. S.D. was then assigned to the HSI Border Enforcement Security Interdiction Task Force. *See* **Doc. 41-5, Ex. E, at 1**; **Doc. 52, at 14**. S.D. remained a full-time NMSP officer and she was paid solely by the NMSP. *See* **Doc. 52, at 59–60**.

As an NMSP and federal Task Force officer, S.D. reported to Officers Ron Wood and Arcenio Chavez, and Special Agent Karl Flusche. *See* **Gov't Ex. 1, at 2**. Officers Wood and Chavez were NMSP officers and were also designated as HSI Task Force Officers. *See* **Doc. 52, at 58**. Special Agent Flusche worked as an HSI special agent and was the supervisor of the Task Force. *See* **Doc. 52, at 14–15**. S.D. regularly kept Officers Wood and Chavez informed of her law enforcement activities. *See* **Doc. 52, at 58–59**.

On September 12, 2020, S.D. was patrolling the area around Gallup, New Mexico and was observing traffic. *See* **Doc. 41-5, Ex. E, at 1**; *see also* **Doc. 52, at 60–61**. That morning, S.D. was driving her NMSP vehicle and wearing her state police uniform, and she had her assigned narcotics detection dog, Iza, patrolling with her. *See* **Doc. 41-5, Ex. E, at 1**; **Doc. 52, at 61–62**. S.D. was observing traffic on Interstate 40 East when she encountered Defendant Nelson's vehicle. *See* **Doc. 41-5, Ex. E, at 1**. S.D. stated that she observed Defendant's vehicle "weave" towards another lane and that it was "following

dangerously close" to another vehicle. *Id.*; *see also* **Doc. 52, at 63**. S.D. then initiated a stop of Defendant's vehicle, and as she approached the passenger side, she was allegedly shot by the vehicle's driver, Defendant Nelson. **Doc. 41-5, Ex. E, at 2–3**. S.D. fired her weapon in response, the car fled the scene, and a chase ensued. *Id.* at 3–4. Defendant was later stopped and apprehended by S.D. and local and state police officers. *Id.* at 6. After the incident, S.D. contacted one of her supervisors, Officer Wood. *See* **Doc. 52, at 64**. Officer Wood then informed Officer Chavez and Special Agent Flusche of the incident. *Id.*

## DISCUSSION

The Government files the instant motion, asking the Court to determine, as a matter of law, that Officer S.D. was a federal officer under 18 U.S.C. § 1114 at the time of the shooting, and that "highway narcotics interdiction" is a federal law enforcement function. *See* **Doc. 36, at 1**. In response, Defendant contends that S.D. is not a federal officer because she was not carrying out her duties as a designated Task Force Officer nor was she assisting Special Agent Flusche at the time of the shooting, and therefore, the Court lacks subject matter jurisdiction and must dismiss the indictment. *See* **Doc. 41, at 8**. As discussed below, the Court finds that, based on the evidence presented, S.D. is a federal officer covered by § 1114 because she was properly designated as a full-time Homeland Security Investigations Task Force Officer.

### I. The Legal Framework for "Federal Officer" Status.

18 U.S.C. § 1114 penalizes whoever kills or attempts to kill "any officer or employee of the United States" or "any person assisting such an officer or employee" in the performance of such duties or on account of that assistance. The "federal officer" requirement is jurisdictional. *See United States v. Feola*, 420 U.S. 671, 676 (1975). The threshold legal question of whether the "type of individual" at issue is an "officer or employee of the United States" or a "person assisting such an officer" under § 1114 is a question for the Court. *See United States v. Martin*, 163 F.3d 1212, 1214 (10th Cir. 1998). However, it is the jury

who must decide the ultimate issue of fact—whether the individual "was engaged in the performance of federal duties." *Id.*

The Court of Appeals for the Tenth Circuit and other courts have found that a state or local police officer deputized by a federal agency is a federal official or employee under 18 U.S.C. § 1114.[3] *See, e.g., Martin*, 163 F.3d at 1215 (finding that a local Oklahoma Police Department detective was a federal officer under § 1114 because he was deputized to participate in a federal narcotics investigation at the time that the charged conduct occurred); *United States v. Diamond*, 53 F.3d 249, 251–52 (9th Cir. 1995) (finding that a local Oregon Sheriff's Deputy cross-deputized as a special deputy U.S. marshal, assigned to the FBI Fugitive Task Force, and acting at the direction of a federal agent was a federal official under § 1114).

Courts have also found that a state or local officer is a federal officer under § 1114 by way of contract or designation. *See, e.g., United States v. Smith*, 194 F.3d 1321 (10th Cir. 1999) (finding that a tribal law officer enforcing federal law on tribal lands as authorized by a contract between the Bureau of Indian Affairs and the Osage Nation tribe was a federal officer under § 111); *United States v. Bettelyoun*, 16 F.3d 850, 852 (8th Cir. 1994) (concluding that Oglala Sioux tribal officers were federal officers under § 1114 where the Bureau of Indian Affairs had delegated its law enforcement functions to the tribe by contract and had designated tribal officers to carry out BIA functions under the contract); *United States v. Oakie*, 12 F.3d 1436, 1440 (8th Cir. 1993) (same).

Separately, in determining whether an individual is a person "assisting" a federal officer, the issue can be framed as "whether the performance of his [or her] official duties was for the purpose of assisting a federal officer." *See United States v. Ama*, 97 F. App'x 900, 901–02 (10th Cir. 2004). The plain meaning

---

[3] In analyzing § 1114, courts often look to decisions interpreting 18 U.S.C. § 111(a), a criminal statute that is analogous to and incorporates § 1114, to determine whether an individual is a federal officer. *See, e.g., United States v. Martin*, 163 F.3d 1212, 1215 (10th Cir. 1998). § 111(a) provides in part that:
> Whoever—(1) forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties[,] shall…where such acts involve physical contact with the victim of that assault or the intent to commit another felony, be fined under this title or imprisoned not more than 8 years, or both.

of the term assist means "to give support or aid." *See United States v. Holder*, 256 F.3d 959, 965 (10th Cir. 2001) (quoting *United States v. Murphy*, 35 F.3d 143, 145 (4th Cir.1994)).  Thus, the term "assist" "generally connotes a role in which the person providing assistance does not act independently, but operates under the direction of or in conjunction with the individual being assisted." *See United States v. Sapp*, 272 F. Supp. 2d 897, 906 (N.D. Cal. 2003); *Holder*, 256 F.3d at 965 ("[T]he common usage of 'employed to assist' means that a person is being used to help a federal agent.").

A court may find "assistance" where there is "some mutual contemporaneous involvement" between state and federal law enforcement officials.  *See United States v. Smith*, 296 F.3d 344, 347 (5th Cir. 2002) (concluding that Dallas police officers were assisting a federal officer where the evidence showed that "the Dallas police officers and the FBI agents were jointly pursuing a suspect in a federally-investigated bank robbery").  However, the "physical presence of a federal agent at the time of the assault [or attempted assault] is not required." *See Ama*, 97 F. App'x at 902.

Additionally, courts have concluded that a state officer, or even a private citizen, is a person "assisting" a federal officer where they are "acting in cooperation with and under control of federal officers." *See United States v. Williamson*, 482 F.2d 508, 512 (5th Cir. 1973) (finding a state narcotics agent was an official protected under § 111 where the agent was acting in cooperation with and under control of federal officers in effecting an arrest for violations of federal drug laws when he was assaulted); *United States v. Hooker*, 997 F.2d 67, 74 (5th Cir. 1993) (finding a Mississippi Bureau of Narcotics officer to be a federal agent where he was "enlisted" by the DEA to assist with a coordinated federal drug investigation and was attacked during the surveillance investigation); *United States v. Bedford*, 914 F.3d 422, 428 (6th Cir. 2019) (finding a truck driver employed by a private trucking company that had a contract with the U.S. Postal Service to transport mail was a person assisting a federal officer or employee when he was attacked while transporting U.S. mail).

"Direct control" by a federal employee or officer is not determinative. *See Murphy*, 35 F.3d at 147 ("Whether a federal agent was directly controlling [North Carolina State Deputy] Baker, or even present, is a difference without a distinction. Baker was working pursuant to a contract with the USMS and assisting it in its official duties; therefore, he is clothed with the protective mantle of §§ 111, 1114."). However, "when a non-federal employee inadvertently serves a federal interest, but does not do so pursuant to contract or direction by the federal government, he does not assist a federal employee under § 1114." *See Bedford*, 914 F.3d at 429.

II.     **Officer S.D. is a "federal officer" for the purposes of 18 U.S.C. § 1114.**

At issue here is whether S.D., a full-time New Mexico State Police officer who was also designated as a full-time HSI Task Force Officer, is an "officer or employee of the United States" within the meaning of 18 U.S.C. § 1114.

The Government argues that S.D.'s completed and approved Task Force Officer application and her designation by Immigration and Customs Enforcement as an HSI Task Force Officer is sufficient to support a finding that she was "deputized" or "directly appointed as a federal officer." **Doc. 36, at 5–6**. Additionally, the Government argues that S.D. is a federal officer under § 1114 because she was assisting her federal supervisor, HSI Special Agent Flusche, in his highway narcotics interdiction mission on the day of the incident. *Id.* at 7. The Government asserts that "[o]n the morning of September 12, 2020, TFO Duran was patrolling Interstate 40 in a federal effort, as assigned by an HSI [Task Force Officer] or Special Agent, and would not have been there doing that work otherwise." **Doc. 56, at 4**. The Government alleges that even if S.D. was not a Task Force Officer, S.D. "would have been assisting the Interdiction Task Force in its federal mission by patrolling Interstate 40 and being alert for signs of drug trafficking during traffic stops." *Id.*

Defendant primarily contends that S.D. is not a federal officer under § 1114 because S.D. was not performing the duties of a designated HSI Task Force Officer.  *See* **Doc. 41, at 8**; **Doc. 57, at 2**.  In support, Defendant argues that S.D.'s duties as a Task Force Officer did not include enforcement of New Mexico traffic laws and further, that S.D. lacked authorization under federal law to conduct a stop of Defendant. *See* **Doc. 41, at 8–10**.  Defendant maintains that "there was nothing about what [S.D.] was doing that was federal in nature," there is no evidence that S.D. was "working a scheduled shift on behalf of either the state of New Mexico or HSI and therefore not working at the behest or under the supervision of any HSI officer," and that there is no evidence that S.D. "ever checked in with [Special Agent] Flusche to notify him that she was going on patrol" as a Task Force Officer.  *See* **Doc. 57, at 3–4, 6**.  Additionally, Defendant argues that S.D. was not authorized to act as a Task Force Officer because she "failed to timely submit her completed security documents for the background investigation," which, Defendant argues, was a prerequisite to her participation as a Task Force Officer.  *See* **Doc. 41, at 12**.

As an initial matter, the Court concludes that at the time of the alleged shooting, S.D. was not a "person assisting" a federal officer or employee.  There is no evidence of "some mutual contemporaneous involvement" between S.D. and Special Agent Flusche at the time of the alleged shooting.  Although Special Agent Flusche's presence was not required at the scene, there was no evidence that Special Agent Flusche was aware of or sanctioned S.D.'s law enforcement duties, nor was there any evidence that Special Agent Flusche communicated with S.D. or directed her activities in any manner on the day of the alleged shooting.  *See* **Doc. 52, at 62, 64**.  Thus, the Court finds that S.D. cannot be a federal officer within the meaning of 18 U.S.C. § 1114 by way of "assistance."  *See Sapp*, 272 F. Supp. 2d at 908–10 ("The only link to federal officers in the present case is the joint task force of federal, state and local law enforcement that had taken up the investigation of [] and the capture of [defendant] Sapp…The state and local officers who apprehended Sapp acted independently of any federal officer. No federal officer supervised or

7

participated in the operation. There is no evidence that any federal official even knew that the operation was occurring at the time Sapp was apprehended, or had discussed the apprehension of Sapp with state officials for nearly three weeks prior to the operation."); *United States v. Reed*, 375 F.3d 340, 345 (5th Cir. 2004) (holding that a Dallas Police officer was not assisting a federal official where the evidence did not show that the officer was "supporting or acting as an auxiliary" to an FBI agent in the pursuit of the same bank robbery suspect).

Nevertheless, the Court concludes that Officer S.D. is a federal officer covered by § 1114 because she was properly designated as an HSI Task Force Officer. First, the Court considers the statutory authority governing HSI Task Force Officers and the agreement under which federal authority was delegated to such officers. Under 19 U.S.C. § 1401(i), the Secretary of the Treasury may authorize by law or designate "any agent or other person, including foreign law enforcement officers" as a "customs officer" to perform any duties of an officer of the Customs Service. In 2016, pursuant to 19 U.S.C. §§ 1401(i), 1589a, and the Homeland Security Act of 2002, HSI and the NMSP entered into a Memorandum of Understanding ("MOU") regarding the "Designation of New Mexico State Police as Customs Officers (Excepted) Employees." *See* **Gov't Ex. 2, at 1**. The purpose of the MOU was to offer "close cooperation and coordination" between HSI and the NMSP to ensure "effective enforcement of the laws relating to HSI jurisdiction." *See* **Gov't Ex. 2, at 1**.

In relevant part, under the MOU, HSI agreed to designate certain NMSP officers as federal Task Force Officers and provide appropriate training in "laws, policies, and procedures" for each qualified and designated NMSP officer. *Id.* In return, the NMSP agreed that only sworn NMSP officers who successfully completed the HSI training course and received an approved designation form would be designated as federal Task Force Officers. *Id.* **at 2**. The NMSP also agreed that each NMSP officer would be bound by the authorities and restrictions noted in their designation form. *Id.*

HSI Directive 18-02 also provided guidance regarding the designation of state, local, tribal, and foreign law enforcement officers as Task Force Officers.  *See* **Gov't Ex. 3, at 1**.  HSI Directive 18-02 provided that state law enforcement officers "may be designated as Customs Officers (Excepted) and authorized to perform the full range of law enforcement duties of a Customs Officer, as authorized by an HSI Special Agent in Charge (SAC)."  *Id.*  However, HSI did "not convey[] the authority to enforce administrative violations of immigration law" under Title 8 or controlled substance violations under Title 21.  **Gov't Ex. 3, at 1**; **Gov't Ex. 2, at 2**.  Thus, designations "augment[ed]…authorities granted to [Task Force Officers] by their parent agency," and Task Force Officers could exercise the authority granted "only when operating on behalf of HSI."  *See* **Gov't Ex. 3, at 1**.

A full-time Task Force Officer, as defined under HSI Directive 18-02, is a "sworn [law enforcement officer] who is co-located with and assigned to an HSI-led task force or group, significantly contributing to multiple HSI investigations and reporting to an HSI supervisor[,] [and is] cross-designated with Title 19 authority."  *See* **Gov't Ex. 3, at 2–3**.  In sum, after designation, Task Force Officers were authorized to investigate federal crimes, make arrests for the violation of federal criminal laws, and work with an HSI-led task force.

Next, the Court considers Officer S.D.'s designation as a federal Task Force Officer.  The Court finds the following facts relevant to S.D.'s designation:

(1) S.D. was nominated by the NMSP to become a federal Task Force Officer.  *See* **Doc. 52, at 15**.

(2) S.D. completed HSI Task Force Officer training.  *See* **Gov't Ex. 1, at 1, 4**.

(3) S.D. submitted the "required security documents" to initiate her background investigation by HSI's deadline of August 11, 2020.  *See* **Gov't Ex. 1, at 1**.

(4) On August 26, 2020, Acting Special Agent in Charge signed S.D.'s Designation of Customs Officer form.  *See* **Gov't Ex. 1, at 2–3**.

(5) On July 16, 2021, S.D. received a letter from Immigrations and Customs enforcement that she was "found ineligible" to participate in the Task Force Officer Program. *See* **Doc. 41-4, Ex. D**.

(6) However, on July 29, 2021, S.D. received a letter from the Office of the Special Agent in Charge at HSI that the agency had rescinded its initial July 16 letter, resulting in a "favorable background decision allowing [S.D.] to continue as a vetted Task Force Officer and eligible to participate in the HSI Task Force Program." *See* **Gov't Ex. 4**.

After receiving her designation, S.D., as a Task Force Officer, was authorized to: (1) carry a firearm; (2) execute and serve any order, warrant, subpoena, or summons issued under the authority of the United States; (3) make an arrest without a warrant for any offense against the United States committed in her presence or for a felony committed outside the her presence if she has reasonable grounds to believe that the person to be arrested has committed or is committing a felony; (4) make seizures of property in compliance with United States and Customs laws; and (5) conduct customs border searches for merchandise being imported into or exported from the United States, and detain people or items as necessary. *See* **Gov't Ex. 1, at 2**.

The Court finds that the evidence presented is sufficient to support a finding that Officer S.D. was appropriately designated as a federal Task Force Officer and authorized to perform federal law enforcement tasks. At the time of the alleged shooting on September 12, 2020, S.D. had been designated as a full-time Task Force Officer and assigned to an Interdiction Task Force. Although S.D. was not "deputized," the issue of a formal deputization is not dispositive. For example, in *United States v. Bettelyoun*, the Eighth Circuit stated that tribal officers who had been designated as Deputy Special Officers of the Bureau of Indian Affairs were "federal officers" within the meaning of 18 U.S.C. § 111. 16 F.3d 850, 852–53 (8th Cir. 1994). Here too, the Court finds the Acting Special Agent in Charge's designation of S.D. as a federal Task Force Officer sufficient to confer federal officer status under § 1114.

Moreover, the evidence does not support Defendant's contention that S.D. did not timely submit or complete required background checks. At minimum, before designation, Task Force Officers must have local background checks completed, such as checks within the Treasury Enforcement Communications System, National Crime Information Center, and National Law Enforcement

10

Telecommunications System. *See* **Doc. 52, at 21–23**. The local background checks for S.D. were completed prior to her designation. *See* **Gov't Ex. 1, at 1**. At the time of the alleged shooting, S.D. had not yet been issued a Personal Identity Verification ("PIV") card or received access to HSI federal databases or federal buildings. However, these facts are not dispositive and have no bearing on S.D.'s designation. Regardless of whether S.D. received a PIV card or federal building access prior to the alleged shooting, S.D. had adequately completed the requisite steps to be designated as a federal Task Force Officer by September 12, 2020 and received a "favorable background decision" after the completion of those background checks.

Finally, Defendant raises a number of arguments that S.D. is not a federal officer under § 1114 because S.D. was not performing any federal duties at the time and that she was acting outside the scope of her authority. However, the question of whether S.D. "was engaged in the performance of federal duties" is a question for the jury. *See Martin*, 163 F.3d at 1214; *see also United States v. Luna*, 649 F.3d 91, 101 (1st Cir. 2011). To the extent Defendant cites to the fact that HSI Directives or S.D.'s designation did not specifically authorize the law enforcement activities at issue here, any limits S.D. had as an HSI Task Force Officer at the time of the incident is relevant only in determining whether she was acting within the scope of her official duties.

## CONCLUSION

The Court finds that Officer S.D. is a federal officer within the meaning of 18 U.S.C. § 1114. The Court also finds, and no party disputed, that highway narcotics interdiction is a federal law enforcement task. Still, the question of whether Officer S.D. was engaged in the performance of her official duties at the time of the alleged assault is a question of fact which must be left to the jury, and properly remains the Government's burden to prove. *See Martin*, 163 F.3d at 1214 ("[T]he jury must decide the ultimate issue

of fact—whether Detective O'Rourke was engaged in the performance of federal duties."); *Ama*, 97 F. App'x at 901 fn.2 ("Whether an individual was engaged in official duties is a question of fact.").

**IT IS THEREFORE ORDERED** that the Government's Motion to Determine Federal Officer Status (**Doc. 36**) is **GRANTED** for reasons described in this Memorandum Opinion and Order.

_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE